Pennsylvania Public Utility Commission, Appellee, and Philadelphia Electric Company, Intervening Appellee, *v.* Robert W. Blanchette, Richard C. Bond, John H. McArthur, Trustees of the Property of Penn Central Transportation Company, Debtor, Appellants.

Argued September 8, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert Szwajkos,* for appellants.

*Edward Munce,* with him *Herbert E. Squires,* Assistant Counsel, and *Peter W. Brown,* Counsel, for appellee.

*David H. Marion,* with him *Harold E. Kohn, Allen D. Black, Carole Broderick,* and *Harold E. Kohn, P.A.,* for intervening appellee.

OPINION BY JUDGE MENCER, October 8, 1975:

This is an appeal from the order of the Pennsylvania Public Utility Commission (Commission) which allows Philadelphia Electric Company (PEC) to file, for services rendered on and after June 25, 1974, a rule which may permit it to bill customers in bankruptcy on a biweekly, rather than monthly, basis.

Robert W. Blanchette, Richard C. Bond, and John H. McArthur, trustees of the property of Penn Central

Transportation Company (Penn Central), have appealed the Commission's order of June 25, 1974 and assert here that Penn Central has paid PEC on a current basis; that PEC is amply protected from financial loss by the provisions, restrictions, and conditions of the Penn Central reorganization proceedings; that the proposed billing change would adversely affect the cash position of Penn Central; and that the biweekly billings would have a detrimental effect on Penn Central's operational revenue.

This Court's review of an order of the Commission is limited both by statute and prior case law. We have repeatedly described our scope of review of Commission orders in terms of what we set forth in *York v. Public Utility Commission*, 3 Pa. Commonwealth Ct. 270, 281 A. 2d 261 (1971). We stated there:

"Section 1107 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1437, provides: '. . . The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation, of constitutional rights. . . .' Section 1112 of the same Act, 66 P.S. §1442, provides: 'Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found. . . .'

"Our authority to overrule an order of the Commission is limited. We may not disturb such an order except for errors of law, lack of evidence to support a finding, determination or order of the Commission, or violation of constitutional rights. Clemmer v. Pennsylvania Public Utility Commission, 207 Pa. Superior Ct. 388, 217 A. 2d 800 (1966). Likewise, we may not exercise our independent judgement on the record or resolve conflicting evidence. Pittsburgh Railways Company v. Pennsylvania Public Utility Commission,

198 Pa. Superior Ct. 415, 182 A. 2d 80 (1962). Our inquiry is directed to whether there is substantial evidence to support the Commission's action. Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission, 170 Pa. Superior Ct. 411, 85 A. 2d 646 (1952). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129, 61 A. 2d 343 (1948). Substantial evidence has also been said to mean evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. Substantial evidence is synonymous with competent and relevant evidence having a rational probative force. In Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission, 425 Pa. 501, 229 A. 2d 748 (1967), it was held that in view of Section 1107 of the Public Utility Law of 1937, the Pennsylvania Public Utility Commission's exercise of its discretion must be accepted by the courts unless its action is totally without support in the record, or is based on an error of law or is unconstitutional." 3 Pa. Commonwealth Ct. at 275-76, 281 A. 2d 263-64.

The average monthly PEC bill to Penn Central is approximately $700,000 and, because payment was not due under the existing tariffs until 20 days after the end of the month, a default of a single month's billing by Penn Central would result in a loss to PEC in excess of $1 million. The record discloses that there was an outstanding bill of "close to $1 million" when Penn Central went into bankruptcy in June of 1970. Since June of 1970, the trustees of Penn Central have been required by an order of the Federal Bankruptcy Court to pay all utility bills within 15 days after receipt of such bills.

The Commission reasoned that billing customers in bankruptcy or receivership more freqently than monthly

would limit PEC exposure to substantial loss of revenues which would occur if a customer in receivership were unable to pay bills for utility service. The Commission order succinctly sets forth the rationale upon which it is based:

"Other customers of respondent [PEC] should not be required to bear an unnecessarily great burden when one utility customer suffers financial reverses. It is our opinion that all other customers would be burdened with these additional costs which must be minimized to the extent reasonable in the circumstances. We believe that a biweekly billing period would be more reasonable in view of the Bankruptcy Court decision in the case of Penn Central. While there will be additional costs to both respondent and the customers affected by this change in rule, it is in the public interest that all customers be protected from unreasonable additional costs of service. . . ."

Following our examination of the record and consideration of the above reasoning, it does not appear that the Commission's order permitting PEC to bill Penn Central on a biweekly basis for services rendered was arbitrary, unsupported by evidence, or an abuse of discretion. We perceive no error of law or violation of constitutional rights.

Order affirmed.[1]

---

1. The role of this Court is to decide whether, as a matter of Pennsylvania law, the Commission's order of June 25, 1974 should be affirmed, vacated, or set aside, either in whole or in part, and our holding here is restricted solely to that issue. We recognize the exclusive jurisdiction of the Federal District Court relative to the bankruptcy proceedings of Penn Central, and, if the Commission order under consideration here impinges unreasonably on those proceedings, it is for the Federal District Court, rather than this Court, to so decide.